ALFRED B. SMITH, plaintiff in error, *vs.* THE ORDINARY OF CHATHAM COUNTY, defendant in error.

1. A Solicitor General, elected in 1867, is estopped from claiming compensation, under a law passed in 1857, but repealed in 1866.

2. That portion of the Constitution of 1868, which confirms and makes valid the Acts of the Legislature of 1865 and 1866, was only intended to quiet doubt, and was not necessary to give them validity. In any event, as that body was a government *de facto*, in harmony with the United States, its Acts are good, *proprio vigore.*

Constitutional law. Rebellion. Before Judge SCHLEY. Chatham Superior Court. May, 1871.

By an Act of 1857, the fees of the Solicitor General of the Eastern Circuit, for the business of Chatham county, were payable out of its treasury. This Act was repealed in 1866. Smith became the Solicitor of that Circuit in January, 1867, and acted as such till August, 1870, when he presented his account for such fees, against Chatham county, to the county treasurer for payment, averring that the Act of 1866 was void, because passed by an illegal Legislature. The Ordinary, believing that the Act of 1866 was a valid law, declined to pay the account. Smith asked for a *mandamus* to compel such payment, Judge Schley refused to grant it, and that is assigned as error.

H. TOMPKINS, for plaintiff in error. The Act of 1857 was constitutional: 39 Ga. R., 578. And is still of force: Acts 1868, p. 26. This Act of 1866, repealing the Act of 1857, had no validity till confirmed by Article XI., section 3, of the Constitution of 1868: 38 Ga. R., 300; 39th, 39–41, 248, 389; 41st, 231. The Act of 1866 was not retroactive: 4 Ga. R., 211; 39th, 43; 41st, 231; R. Code, sec. 6. The Acts passed during the war, and those passed before the re-establishing civil government, are on same footing: Const. 1868; 38 Ga. R., 302; 39th, 248. All Acts passed during the suspension of civil government, were, *ipso facto*, void: 41 Ga. R., 234; 43 Ala. R., 498, 502; 5 Pet. R., 18; 5 How. R., 342, 377; Const. of U. S., Art. IV., sec. 4, Art. VI., sec. 2; Paschal's Am. Cons., 233–5; 7 Wall. R., 726, 731–2–3; 12 Ga. R., 475. The laws remained as when Georgia seceded: 43 Ala. R., 498; 6 Wall. R., 13; 7th, 726. Smith has a vested right in these fees: R. M. Charl. R., 425; 4 Ga. R., 209; 10th, 196; 39th, 43, 436, 578; 41st, 231; 2 Sandf. R., (N. Y.) 239; Cooly's Con. Lim., 277 and notes; 6 Cranch R., 133; 10 How. R., 416; 2 Story on Const., sec. 1391.

Private Act not repealed by public general Act: 12 Ga. R., 404.

JACKSON, LAWTON & BASSINGER, for defendant. The Act of 1866 was not to further the rebellion: 7 Wall. R., 700, 32, 33. Smith held office under Constitution of 1865, and if the Legislature of 1866, under that Constitution, was illegal, by the same reasoning, Smith's appointment was void. The law, at the time he did the service, fixes his contract: 3 Parsons, 397; 20 Cal. R., 637.

McCAY, Judge.

1. The petitioner, in this case, was elected and held office under the Constitution and laws in operation in this State in 1866, 1867 and 1868. If that was no government, he was no officer. If the Legislature which passed the Act of 1866 was an illegal body, he was illegally holding office, since the Act of Congress, on which he relies, applies just as much to him as it does the Legislature, since both he and they are but different parts of the same government. Besides, the contract of the petitioner, if it be a contract, was to take the office and perform its duties for the compensation as fixed by the laws in force at the time, and under the government which gave him official existence.

2. But we do not agree that the Act of the Legislature of 1865 and 1866, if in accord with the Constitution then in operation, and not contrary to the Constitution of the United States, needed confirmation by the Constitution of 1868. For purposes of caution, and to meet possible objections, the Convention included in their confirmatory Act the whole period from 1861 to July, 1868. But the government set up in 1865 was in accord with the United States. It was either a legal civil government under the Constitution of the United States, or it was a *de facto* government, permitted and sustained by the military power which was then in possession of the State under the laws of the United States. It

was not a rebellious organization, and it had every quality of a *de facto* government that a *de facto* government can have It was not obnoxious to the objection of the government set up during the war, that it was in antagonism to the Constitution of the United States. If it was not a strictly legal organization, under the Constitution of the United States, (which question we do not enter into). It was at least, even according to the theory of the plaintiff, the mode and manner by which the military power exercised its control. In any event, therefore, the *mandamus* was properly refused.

Judgment affirmed.